IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| ADAEZE DUNCAN,<br><br>    Plaintiff,<br><br>v.<br><br>INTERNATIONAL MARKETS LIVE, INC.,<br><br>    Defendant. | No. 4:20-cv-00017-RGE-HCA<br><br><br>ORDER DENYING<br>DEFENDANT'S MOTION TO<br>COMPEL ARBITRATION |

## I. INTRODUCTION

Plaintiff Adaeze Duncan sues Defendant International Markets Live, Inc. (IML) for breach of contract, promissory estoppel, unjust enrichment, equitable estoppel, and fraudulent misrepresentation. IML requests the Court compel Duncan to arbitrate these claims. IML asserts Duncan agreed to a binding arbitration provision during Duncan's work with IML as an independent contractor. Duncan argues IML fails to provide sufficient evidence Duncan assented to the arbitration terms, and therefore no valid arbitration agreement exists. Duncan further argues that even if an arbitration agreement exists, IML waived its right to arbitrate and the claims are outside the scope of the agreement. Because the Court finds IML fails to show an agreement exists, it does not consider the waiver or scope arguments presented. For the reasons stated below, the Court denies IML's motion to compel arbitration.

## II. BACKGROUND

The Court recounts the following facts, viewing all factual disputes in the light most favorable to Duncan, the nonmoving party. *See City of Benkelman, Neb. v. Baseline Eng'g Corp.*, 867 F.3d 875, 881–82 (8th Cir. 2017) (noting that, on a motion to compel arbitration, the

court applies either the standard used on a motion to dismiss or a motion for summary judgment); *Neb. Mach. Co. v. Cargotec Sols., LLC*, 762 F.3d 737, 741–42 (8th Cir. 2014) (applying a summary judgment standard on a motion to compel arbitration where both parties relied on matters outside the pleadings).

IML is a company that provides educational tools and information for trading foreign and crypto currencies. Def.'s Mem. Supp. Mot. Compel Arbitration 2, ECF No. 47-1. IML contracts with individuals as Independent Business Owners (IBOs) through IML's website. *Id.* IML asserts IBOs' work with IML is governed by IBO Agreements. *Id.* An IBO agreement incorporates IML's Terms and Conditions and Policies and Procedures. *Id.*

Since 2016, IML has used three different versions of the Terms and Conditions and Policies and Procedures. Def.'s Exs. A–D Supp. Mot. Compel Arbitration, ECF Nos. 47-2 to 47-5. In the first version, effective from 2016 to 2018, the Terms and Conditions and Policies and Procedures were included in a single document entitled "Disclaimer." ECF No. 47-4; Lowe Aff. Supp. Def.'s Mot. Compel Arbitration ¶ 12, ECF No. 48-1. The second version controlled from 2018 to 2019 and also contained the Terms and Policies in one document. ECF No. 47-5; Lowe Aff. ¶ 13, ECF No. 48-1. The third and current version controlled from January 15, 2019 to the present. ECF No. 47-2 (Terms and Conditions); ECF No. 47-3 (Policies and Procedures); Lowe Aff. ¶¶ 10–11, ECF No. 48-1. This version provides the Terms and Conditions in a separate document from the Policies and Procedures. *See* Lowe Aff. ¶¶ 10–11, ECF No. 48-1.

Since 2016, the Terms and Conditions included an arbitration provision. ECF Nos. 47-2, 47-4 to 47-5. All three versions of the Terms and Conditions (or Disclaimer) state that "[l]ogging onto" the IML website constitutes agreement to the terms. Lowe Aff. ¶ 17, ECF No. 48-1; ECF Nos. 47-2, 47-4 to 47-5.

In July 2016, Adaeze Duncan became an IBO with IML by registering through IML's website. Duncan Aff. Supp. Pl.'s Resist. Def.'s Mot. Compel Arbitration ¶¶ 2, 4, ECF No. 55-9; ECF No. 47-1 at 2. As part of this process, Duncan followed multiple required steps, clicked on boxes, filled out forms, and agreed to a prompt to become an IBO. Duncan Aff. ¶ 4, ECF No. 55-9; Pl.'s Resist. Mot. Compel Arbitration 8, ECF No. 55. Duncan does not recall the content of the online forms to which she agreed. Duncan Aff. ¶ 5, ECF No. 55-9.

IML contends Duncan was required to agree to the Terms and Conditions and Policies and Procedures when she entered into an IBO Agreement as part of her IBO registration. ECF No. 47-1 at 3; Lowe Aff. ¶ 15, ECF No. 48-1. IML's Chief Operations Officer attests that, before completing registration, Duncan would have seen the IBO Registration Screen. Lowe Aff. ¶ 15, ECF No. 48-1. This screen would have required Duncan to check boxes next to the statements, "I have completely read and fully agree to the International Markets Live Inc. Policies & Procedures" and "I have completely read and fully agree to the International Markets Live, Inc. Terms and Conditions." *Id.* IML provides an example of this prompt from the IBO Registration Screen:



Def.'s Ex. E Supp. Mot. Compel Arbitration, ECF No. 47-6.

3

Duncan maintains she never saw the IBO Registration Screen during her registration process. Duncan Aff. ¶ 6, ECF No. 55-9.

IML states Duncan navigated through the IML Login Screen in 2020 and was specifically prompted to "reaffirm her agreement to the Policies and Procedures" by a pop-up window. Lowe Aff. ¶ 20, ECF No. 48-1; Def.'s Ex. F Supp. Mot. Compel Arbitration, ECF No. 47-7; Def.'s Reply Supp. Mot. Compel Arbitration 4, ECF No. 57. This pop-up window displayed the current version of the Policies and Procedures and an "I Agree" button. *Id.* IML supplies a copy of this screen:



ECF No. 47-7.

Duncan admits she visited the IML website in 2020, but denies logging onto her account at that time. Duncan Aff. ¶¶ 24–26, ECF No. 55-9. Duncan alleges she has never seen nor clicked to agree to the IML Login Screen prompts. *Id.* ¶¶ 7, 25, 27. She also contends she did not agree to any IML Terms and Conditions or Policies and Procedures in 2020. *Id.* ¶ 29.

Duncan created content for IML until June 2019. Pet. ¶ 6, ECF No. 1-1. From June 2017 to June 2019, Duncan worked as an "IML.TV educator," built the IML Academy,[1] and created an IML handbook. Duncan Aff. ¶¶ 13–15, ECF No. 55-9. Duncan contends the parties entered a series of oral agreements and modifications concerning Duncan's work as an IML.TV educator, IML Academy creator, and IML handbook creator. *Id.* ¶¶ 17–18; *see generally* ECF No. 1-1 ¶¶ 13–66. On June 17, 2019, IML emailed Duncan to inform her that "any existing agreement now as an independent educator with International Markets Live Inc., iMarketsLive, and or IML" was terminated. Pl.'s Ex. K Supp. Resist. Def.'s Mot. Compel Arbitration, ECF No. 55-11.

Duncan sued IML in the Iowa District Court for Polk County on October 22, 2019, alleging claims for breach of contract, promissory estoppel, unjust enrichment, equitable estoppel, and fraudulent misrepresentation. ECF No. 1-1 ¶¶ 67–219. Defendant removed to this Court on January 13, 2020. Notice Removal, ECF No. 1.

Now before the Court is IML's motion to compel arbitration. ECF No. 47. Duncan resists IML's motion. ECF No. 55. The parties did not request oral argument, and the Court declines to order it, finding the parties' briefings adequately present the issues. *See* Fed. R. Civ. P. 78(b); LR 7(c).

Additional facts are discussed below as needed.

### III. LEGAL STANDARD

When both parties submit materials beyond the pleadings on a motion to compel arbitration, the Court applies a summary judgment standard to view all evidence and resolve all factual disputes in the light most favorable to the nonmoving party. *See Neb. Mach. Co.*, 762 F.3d at 741–42; *see also City of Benkelman*, 867 F.3d at 881–82; *accord Morgan v. Sundance*,

---

[1] Defendants refer to the IML Academy as the IM Mastery Academy. ECF No. 47-1 at 2. The Court uses the term IML Academy for simplicity and consistency.

*Inc.*, No. 4:18-cv-316-JAJ-HCA, 2019 WL 5089205, at *3 (S.D. Iowa June 28, 2019). Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042–43 (8th Cir. 2011) (en banc) (internal quotation marks omitted) (quoting a prior version of Fed. R. Civ. P. 56(c)(2)). Similarly, "[a] district court may conclude as a matter of law that parties did or did not enter into an arbitration agreement only if there is no genuine dispute as to any material fact concerning the formation of such an agreement." *Mason v. Midland Funding LLC*, 815 F. App'x 320, 328 (11th Cir. May 13, 2020) (unpublished) (internal quotation marks and citation omitted).

The nonmoving party "receives the benefit of all reasonable inferences supported by the evidence but has 'the obligation to come forward with specific facts showing that there is a genuine issue for trial.'" *Atkinson v. City of Mt. View, Mo.*, 709 F.3d 1201, 1207 (8th Cir. 2013) (quoting *Dahl v. Rice Cty., Minn.*, 621 F.3d 740, 743 (8th Cir. 2010)). The nonmoving party must show more than "some metaphysical doubt as to the material facts" and must come forward with "specific facts showing that there is a genuine issue for trial." *Torgerson*, 643 F.3d a 1042 (citing *Matsushita*, 475 U.S. at 586–87). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (internal quotation marks and citation omitted). "On a motion for summary judgment, the court consider[s] all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . affidavits, and draws all reasonable inferences in favor of the non-moving party." *Meyer v. Uber Tech., Inc.*, 868 F.3d 66, 74 (2d Cir. 2017) (alterations in original) (internal quotation marks and citations omitted). The court may consider the same evidence on a motion to

compel arbitration. *Cf. City of Benkelman*, 867 F.3d at 881–82; *see Morgan*, 2019 WL 5089205, at *5.

While "conclusory, self-serving statements, standing alone" are insufficient to establish a material issue of fact, independent supplemental evidence can create a genuine issue of fact. *O'Bryan v. KTIV Television*, 64 F.3d 1188, 1191 (8th Cir. 1995) (internal quotation marks and citation omitted). A nonmoving party cannot "create a genuine issue of material fact simply by submitting an affidavit that contradict[s prior] testimony." *Frevert v. Ford Motor Co.*, 614 F.3d 466, 474 (8th Cir. 2010). But a district court will consider an affidavit that does not contradict previous testimony or create a factual issue "where none existed before" through a "sudden and unexplained revision of testimony." *See Bass v. City of Sioux Falls*, 232 F.3d 615, 618–19 (8th Cir. 1999) (internal quotation marks and citation omitted) (finding district court erred in disregarding affidavit testimony on a motion to compel arbitration when affidavit did not contradict deposition testimony or constitute a sham issue of fact).

Defendant moves to compel arbitration under section four of the Federal Arbitration Act. *See* ECF No. 47-1 at 7. The Federal Arbitration Act reflects "a liberal federal policy favoring arbitration agreements." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 346 (2011) (internal quotation marks omitted) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24 (1983). Under the Federal Arbitration Act, "[a] written provision in . . . a contract . . . to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. Section four provides "[a] party aggrieved by the alleged failure . . . of another to arbitrate under a written agreement for arbitration may petition [the court] . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. Courts must enforce an arbitration agreement according to its terms. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019).

The district court plays "a threshold role to determine 'whether the parties have submitted a particular dispute to arbitration.'" *Catamaran Corp. v. Towncrest Pharm.*, 864 F.3d 966, 970 (8th Cir. 2017) (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002)). When reviewing an arbitration clause, the court asks only "whether a valid arbitration agreement exists and, if so, whether the particular dispute falls within the terms of that agreement." *Dickson v. Gospel for ASIA, Inc.*, 902 F.3d 831, 834 (8th Cir. 2018). These threshold questions are for judicial determination "[u]nless the parties clearly and unmistakably provide otherwise." *Catamaran Corp.*, 864 F.3d at 970 (quoting *Howsam*, 537 U.S. at 83) (internal quotation marks omitted) (alteration in original).

**IV.  DISCUSSION**

IML asserts Duncan's claims must be arbitrated because Duncan entered into a binding arbitration agreement with IML on at least two occasions: first, when she registered to become an IBO, and second, when she logged onto her IML account and was prompted to click "I Agree" to the Policies and Procedures in 2020.[2] ECF No. 47-1 at 4, 8–9; ECF No. 47-1 at 3–4; ECF No. 57 at 4. IML further contends Duncan reaffirmed her assent to the arbitration provision each time she logged onto IML's website. Lowe Aff. ¶ 16, ECF No. 48-1. Duncan argues IML fails to provide sufficient evidence an arbitration agreement was formed on any of these occasions. ECF No. 55 at 15–16. The Court finds IML has not met its burden of proof to show the existence of an enforceable agreement. The Court further finds there is a genuine issue of material fact concerning whether Duncan agreed to the arbitration terms. Thus, the Court denies IML's motion to compel arbitration.

---

[2] IML does not contend Duncan logged onto her IML account in any other year. IML only alleges Duncan "last logged onto IML's website" in 2020. ECF No. 47-1 at 4.

### A.     Burden of Proof for Existence of a Contract

"[S]tate contract law governs the threshold question of whether an enforceable arbitration agreement exists between litigants." *Donaldson Co. v. Burroughs Diesel, Inc.*, 581 F.3d 726, 731 (8th Cir. 2009). "Under Iowa law, the elements of a contract are an offer, acceptance, and consideration." *Brondyke v. Bridgepoint Educ., Inc.*, 985 F. Supp. 2d 1079, 1091 (S.D. Iowa 2013) (citing *Taggart v. Drake Univ.*, 549 N.W.2d 796, 800 (Iowa 1996)). The offeree "must know of the offer before there can be mutual assent." *Anderson v. Douglas & Lomason Co.*, 540 N.W.2d 277, 283 (Iowa 1995). "An '[a]cceptance of an offer is a manifestation of assent to the terms thereof made by the offeree in a manner invited or required by the offer.'" *Heartland Express, Inc. v. Terry*, 631 N.W.2d 260, 270 (Iowa 2001) (alteration in original) (citing Restatement (Second) of Contracts § 50). While "actual knowledge of the terms of an offer are not essential to the formation of a contract," the defendant must first prove the offeree had an opportunity to read the contract. *Owen v. MBPXL Corp.*, 173 F. Supp. 2d 905, 924 (N.D. Iowa 2001) (finding irrelevant employer's defense that plaintiff did not need actual knowledge of the terms where employer failed to prove it communicated the offer terms to plaintiff) (citing *Bryant v. Am. Exp. Fin. Advisors, Inc.*, 595 N.W.2d 482, 486–87 (Iowa 1999)). Because IML seeks to enforce the arbitration agreement, it has the burden to prove the existence of the agreement. *See Hawkeye Land Co. v. Iowa Power & Light Co.*, 497 N.W.2d 480, 486 (Iowa Ct. App. 1993) ("A party who seeks recovery on a contract has the burden to prove the existence of a contract."); *see also Owen*, 173 F. Supp. 2d at 921 (noting defendant bore the burden of "proving communication and acceptance of the [plan with the arbitration terms]" under Iowa law).

A defendant seeking to prove the existence of an agreement must show plaintiff accepted the terms, not merely that she acknowledged them. *Shockely v. PrimeLending*, 929 F.3d 1012, 1019 (8th Cir. 2019); *see Owen*, 173 F. Supp. 2d at 923–24. In *Shockely*, the Eighth Circuit

considered whether the delegation and arbitration provisions in an employer's electronic handbook bound the plaintiff-employee. 929 F.3d at 1016–20. An employee who clicked on the handbook automatically generated an acknowledgement of review and a pop-up with a hyperlink to the handbook's full text. *Id.* at 1016, 1019. Employment was not conditioned on acceptance of the terms. *Id.* at 1019. Aside from the acknowledgement of review, the employer presented no other evidence the employee assented to the handbook provisions. Because the site did not require the employee to "accept" the terms, but merely advised her she had "acknowledged" them, the court concluded no contract was created when the employee clicked on the handbook. *Id.* The court noted an employee's "general knowledge or awareness of the existence of a contract" was not the "positive and unambiguous unequivocal acceptance required" for a contract under state law. *Id.* (internal quotation marks and citation omitted).

To meet its burden of proof to show the existence of an arbitration agreement, the party seeking to enforce the agreement must provide record evidence that the party it seeks to bind specifically agreed to the arbitration terms. *See Shockley*, 929 F.3d 1017; *Owen*, 173 F. Supp. 2d at 923–24; *see also Meyer*, 868 F.3d at 70. Evidence may consist of affidavits and declarations with supporting attachments showing the terms in use at the time the agreement was entered. *See, e.g.*, *Owen*, 173 F. Supp. 2d at 922; *see also Meyer*, 868 F.3d at 70–72; *see also Mason*, 815 F. App'x at 324–29. Courts have determined that the party seeking to enforce the agreement must present the actual offer terms; evidence of a substantially similar form will not suffice. *See e.g.*, *Mason*, 815 F. App'x at 324–26.

In *Mason*, a credit card company alleged two customers agreed to an arbitration provision in its terms and conditions when they applied for accounts through the company's website. *Id.* at 322. In considering the existence of an agreement, the only issue was whether the credit card company provided the arbitration terms on the customers' application forms. *Id.* at 324.

10

In support of its argument as to the first customer, the credit card company provided a declaration by the Senior Vice President of the company charged with keeping records for the credit card company's accounts. *Id.* at 322, 324. The declaration included a "copy of a template application . . . *in a substantially similar form* to the application that existed" when the first customer applied for an account. *Id.* at 324–25 (emphasis in original). The credit card company argued the first customer could not have opened an account unless he clicked to accept the terms. *Id.* The Eleventh Circuit highlighted that the credit card company did not present the "terms [the customer] actually saw . . . when he viewed the website." *Id.* at 325. The court found an application in "substantially similar form" was insufficient to show "what terms the [customer] had actually seen and agreed to." *Id.* Even if the substantially similar application was identical to the one the customer saw, the court noted there were "evidentiary gaps" because the terms and conditions the credit card company offered into evidence "sa[id] nothing about arbitration." *Id.* Thus, the credit card company failed to prove it provided the customer with the arbitration terms. *Id.* at 325–26.

In contrast, the court found another declaration by a declarant who personally knew of the offer and acceptance was sufficient to show the defendant presented arbitration terms to the second customer. *Id.* at 329. The court noted the declarant demonstrated personal knowledge the credit card company mailed the terms to the customer through "review of her own employer's records, which she 'regularly access[ed] and review[ed]' as part of her employment responsibilities." *Id.* (alterations in original). Because this evidence sufficiently showed the second customer received the arbitration terms, the court found an agreement existed. *Id.*

Similarly, a district court found no agreement existed where the defendant-employer failed to show it communicated arbitration terms to a plaintiff-employee in its dispute resolution plan. *Owen*, 173 F. Supp. 2d at 923–24. The employer supplied two affidavits to establish it

11

communicated the plan's terms to the employee. *Id.* at 922. The first affidavit stated the plan was distributed by mail to all employees at their residences, provided at employee sessions, and included in the handbook on the company's website. *Id.* The court found this affidavit insufficient to show the employer provided the arbitration terms to the employee because there was "no indication that [the affiant] ha[d] any first-hand knowledge regarding the actual distribution of the [plan] to . . . employees." *Id.* It further noted the record did not show employees actually received a copy of the plan, that the employer mailed the plan, or that the employer kept current addresses for its employees. *Id.*

Presentation of the actual arbitration terms is also necessary, even when a defendant seeking to enforce an arbitration agreement provides an affidavit from one who personally communicated the terms to the plaintiff. *See id.* at 923–24. In *Owen*, the employer's second affiant conducted training sessions during which he distributed a summary of the plan and explained the plan to employees—including to plaintiff. *Id.* at 923. Although this affiant had interacted with the plaintiff personally, the court found the employer still failed to meet its burden of proof because there was no evidence the employer distributed "the [p]lan in its entirety" to employees during the session. *Id.* at 923−24. Because the employer did not provide the court with the summary plan, and nothing in the record showed that the plan's material terms were communicated to the plaintiff, the court found the employer failed to prove the existence of an agreement. *Id.* at 924.

The Second Circuit has found that, even absent personal knowledge a plaintiff accepted arbitration terms, an affiant's statements may nevertheless establish a contract existed. *See Meyer*, 868 F.3d at 70, 79–80. This is the case when the affiant makes statements based on records showing the plaintiff received and assented to the terms. *Id.* In *Meyer*, the defendant, a mobile application company, sought to show a plaintiff-user agreed to its arbitration terms by registering with its service. *Id.* at 70–72. In support, the defendant provided two screenshots from its registration page.

12

*Id.* at 70–71. The screenshots show that completing the registration process required a prospective to click "Register," and the user would have seen the statement, "By creating an . . . account, you agree to the [Terms of Service]." *Id.* at 71. Although defendant's affiant did not have personal knowledge of the plaintiff, he represented that the defendant "maintained records of when and how its users registered" for the service. *Id.* at 70. From reviewing those records, the affiant identified the "dates and methods by which [the plaintiff] registered for a user account." *Id.* Based on this evidence, the Second Circuit determined the defendant showed the plaintiff "unambiguously manifested . . . assent to [the defendant's] Terms of Service" and agreed to the arbitration provision. *Id.* at 80. Though the defendant only attached screens a user "would have seen," and not the screens the plaintiff actually saw, it provided an affidavit based on plaintiff's actual registration records with the service. *Id.* at 70. Unlike in *Shockley*, the plaintiff in *Meyer* also had to click "agree" as a condition of his contract. *Cf. Shockley*, 929 F.3d at 1019; *Meyer*, 868 F.3d at 79–80. The defendant thus met its burden to show the plaintiff entered into a contract.

In support of its motion to compel arbitration, IML relies on the affidavit of its Chief Operations Officer, Kyle Lowe. ECF No. 48-1. IML asserts Duncan agreed to the arbitration terms on at least two occasions: first, when Duncan clicked through the IBO Registration Screen to become an IBO, and second, when Duncan logged onto IML's website and navigated through the IML Login Screen as recently as 2020. ECF No. 57 at 4. Duncan contends IML fails to present evidence she accepted the arbitration provision contained in the Terms and Conditions or Policies and Procedures. ECF No. 55 at 15–16. The Court considers whether IML meets its burden to show an agreement formed on either occasion.

### B.   IBO Registration Screen

IML contends Duncan agreed to the arbitration provision during her IBO registration when she accepted the Terms and Conditions on the IBO Registration Screen. ECF No. 47-1 at 3; Lowe Aff. ¶ 8, ECF No. 48-1. In his affidavit, Lowe explains Duncan would have seen the IBO Registration Screen when she created her account. Lowe Aff. ¶ 15, ECF No. 48-1. Lowe states, upon registration, Duncan "was required to agree" to the Terms and Conditions and Policies and Procedures by "actively click[ing] boxes confirming that she completely read and fully agreed" to them. *Id.* But Lowe claims no first-hand knowledge that the terms were presented to Duncan. *See id.* ¶¶ 9, 18. In fact, he does not state the terms were actually communicated to Duncan. Moreover, even if IML conveyed arbitration terms, it fails to show Duncan accepted the terms. Lowe attests that Duncan "was required to agree" and "was required to actively click boxes" when she opened her IML account. *Id.* ¶ 15. But at no point does Lowe state that Duncan actually agreed to any terms. *See generally id.* In contrast to the affiant in *Meyer*, Lowe does not base his review on IML records identifying the date and method by which Duncan registered for an IBO account. *Cf.* 868 F.3d at 70. Bald assertions of what Duncan "was required" to do fail to show she clicked the boxes to manifest assent sufficient for an agreement. *See Owen*, 173 F. Supp. 2d at 923–24. Thus Lowe's affidavit fails to establish IML presented the arbitration terms to Duncan, or that she agreed to them when she became an IBO.

Further, IML produces only "substantially identical" materials to what Duncan saw on the IBO Registration Screen. Lowe Aff. ¶ 15, ECF No. 48-1. Images of the IBO registration process are only "[a]n example"—not the "terms [plaintiff] actually saw . . . when [she] viewed the website." *Mason*, 815 F. App'x at 324; Lowe Aff. ¶ 15, ECF No. 48-1; ECF No. 47-6. Substantially similar terms or example forms are insufficient to prove communication of an offer. *Mason*, 815 F. App'x at 324–25. And unlike the evidence offered against the second plaintiff in *Mason*,

Lowe's affidavit is not based on personally reviewing IML's records. *Cf. id.* at 329. Because IML fails to show it presented the arbitration terms to Duncan or that Duncan "manifested assent" to the terms, IML cannot show the existence of an arbitration agreement. *See Heartland Express*, 631 N.W.2d at 270.

The Court also finds a genuine issue of material fact exists regarding Duncan's assent. Duncan states she "never saw [the IBO Registration Screen] or prompting prior to becoming an IBO." Duncan Aff. ¶ 6, ECF No. 55-9; *see also* Lowe Aff. ¶ 15, ECF No. 48-1. While self-serving affidavits are generally insufficient to create a material dispute of fact, here, the absence of any evidence proffered by IML buttresses Duncan's affirmative assertion that she has never seen the terms constituting the offer. *Cf. Bass*, 232 F.3d at 618. Duncan's affidavit does not contradict her pleadings. Nor does it introduce a "sudden and unexplained revision of testimony" creating a sham issue of material fact. *Id.* (internal citation and quotation marks omitted). Thus, the Court considers Duncan's affidavit and concludes a genuine issue of material fact exists as to the formation of an agreement. *See id.*

On IML's motion to compel, the Court views all genuine issues of material fact in the light most favorable to Duncan, the nonmoving party. *See Neb. Mach. Co.*, 762 F.3d at 742. As such, the Court cannot conclude as a matter of law that the parties formed a valid arbitration agreement when Duncan became an IBO. *See Mason*, 815 F. App'x at 328. ("A district court may conclude as a matter of law that parties did or did not enter into an arbitration agreement only if there is no genuine dispute as to any material fact concerning the formation of such an agreement.") (internal quotation marks and citation omitted).

C.   **Subsequent Logon to IML**

IML also contends Duncan agreed to arbitrate her claims each time she logged onto her IML account and when she navigated through the IML Login Screen. Lowe Aff. ¶¶ 16, 19–20,

ECF No. 48-1. IML appears to make two separate arguments. First, IML argues Duncan "was required to acknowledge having received, read, and understood" the Terms and Conditions and Policies and Procedures each time she logged onto her IML account. Lowe Aff. ¶¶ 16–17, ECF No. 48-1; ECF 47-1 at 3. In support, IML cites Section I of the Terms and Conditions from 2016 to the present. Lowe Aff. ¶ 17, ECF No. 48-1; ECF Nos. 47-2, 47-4 to 47-5. These sections provide that by "[l]ogging onto and using information provided on [IML's website] . . . you hereby agree unconditionally to the legal terms and conditions stated here." *Id.*

Although all versions of the Terms and Conditions include an arbitration provision, IML fails to show the provision applied to Duncan. ECF Nos. 47-2, 47-4 to 47-5. Additionally, while mere "acknowledgement" of terms is insufficient to find assent to a contract, the express terms in Section I uses the language of unconditional agreement. *See Shockley*, 929 F.3d at 1019. As explained above, IML fails to show Duncan agreed to the Terms and Conditions when she became an IBO. Any logons subsequent to Duncan's registration were thus not governed by the terms. Consequently, Duncan could not have "agree[d] unconditionally" to an arbitration provision contained in terms to which she never assented. Lowe Aff. ¶¶ 16–17, ECF No. 48-1.

Second, IML argues Duncan "reaffirm[ed] her agreement" to the policies when she logged onto her account in 2020 and encountered the IML Login Screen. Lowe Aff. ¶¶ 19–20, ECF No. 48-1. This screen allegedly displayed the current version of the Policies and Procedures and prompted Duncan to click "I Agree." IML fails to establish Duncan agreed to the prompt. Even assuming Duncan did log onto her IML account in 2020, and clicked to accept, there is no evidence Duncan was presented with the arbitration terms at that time. While Lowe's affidavit states Duncan "was specifically prompted to reaffirm her agreement" to the Policies and Procedures, he alleges no first-hand knowledge Duncan was presented with, or agreed to, the prompt or the terms. Lowe Aff. ¶ 20, ECF No. 48-1. Lowe does not cite any IML records

confirming the date or method by which Duncan accessed her account. *See id.* IML also produces only a "copy of a template [Login Screen] . . . in a substantially similar form" to the one Duncan saw, which is insufficient to show these were the actual terms presented to Duncan. *Id.*; *see Mason*, 815 F. App'x at 324.

IML maintains Duncan would have seen the third and current version of the Policies and Procedures when she logged onto her account in 2020. Lowe Aff. ¶¶ 19–20, ECF No. 48-1. But the current version of the Policies does not contain the section 11.11 arbitration provision. ECF No. 47-3; *see also* Lowe Aff. ¶ 18, ECF No. 48-1 (reciting the section 11.11 arbitration provision). In fact, it does not include any section numbered 11.11 or any reference to arbitration. Thus, even if Duncan logged onto her account in 2020 and clicked "I Agree" on the IML Login Screen, IML fails to show Duncan would have agreed to any arbitration terms. While the Policies and Procedures from 2016 through 2018 include the arbitration terms, IML does not contend Duncan logged onto her account during that time. *See* Lowe Aff. ¶¶ 18–20, ECF No. 48-1; ECF No. 47-4. Absent sufficient evidence of Duncan's acceptance, or evidence showing IML presented the arbitration terms to Duncan, IML's record evidence suffers "evidentiary gaps" that preclude finding an agreement existed, in 2020 or any time previously. *See Mason*, 815 F. App'x at 325.

Viewing all facts in the light most favorable to Duncan, the Court accepts that while Duncan viewed the IML webpage in 2020, she did not at that time log onto her account. Duncan Aff. ¶¶ 23–24, ECF No. 55-9. Even assuming she logged on and agreed to the policies, IML fails to show Duncan agreed to arbitrate at that time. Consequently, IML cannot show an agreement to arbitrate existed when Duncan logged onto her IML account in 2020. IML's motion to compel arbitration must fail.

## V.     CONCLUSION

Viewing all factual disputes in the light most favorable to Duncan, the Court finds the record, at best, supports the conclusion that Duncan "was required to" review and agree to the arbitration terms when she registered to become an IBO. IML fails to establish Duncan logged onto her IML account in 2020. Even assuming she did so, IML fails to show she assented to any arbitration terms at that time. On these facts, IML cannot show Duncan manifested assent as required to form a contract under Iowa law.

Further, the Court cannot decide as a matter of law that an arbitration agreement existed. The Court finds IML's failure to proffer any evidence that Duncan clicked to agree to IML's Terms and Conditions or Policies and Procedures and Duncan's statements that she never saw or agreed to the alleged prompts during her IBO registration or subsequent logins create a genuine issue of material fact. Thus, the Court is foreclosed from compelling arbitration.

**IT IS ORDERED** that Defendant International Market Live, Inc.'s Motion to Compel Arbitration, ECF No. 47, is **DENIED**.

**IT IS SO ORDERED.**

Dated this 6th day of November, 2020.

REBECCA GOODGAME EBINGER
UNITED STATES DISTRICT JUDGE